Argued February 9, reversed and remanded February 23, 1955

COLLINS *v.* COLLINS

280 P. 2d 364

*George J. Perkins*, Portland, argued the cause and filed a brief for appellant.

*George R. Goodrich*, Tillamook, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN and PERRY, Justices.

TOOZE, J.

This is a suit to recover an interest in real property, brought by Richard Charles Collins, as plaintiff, against Genevieve Collins, as defendant. Decree was entered in favor of plaintiff; defendant appeals.

On February 28, 1946, plaintiff and defendant were intermarried at Ogden, in the state of Utah. Both were then in the military service of the United States. In 1947, the parties established their home at Netarts, in Tillamook county, Oregon. While in the army, plaintiff suffered a head injury, and, upon discharge, was awarded a 50% disability allowance, amounting at first to $75.00 per month, and then raised to $92.50 per month. From 1947 to sometime in 1949, plaintiff worked at various jobs in Tillamook county. Most of his earnings were used for his own personal pleasure and purposes, although while working he did contribute, according to his own testimony, $75.00 to $80.00 per month toward the family expenses. Defendant was also regularly employed by the Tillamook County Creamery Association at Tillamook city, earning in 1949, for example, the sum of $2,548.00. All of her earnings were

devoted to household expenses and payments upon the purchase price of their home.

On October 10, 1948, the plaintiff and defendant entered into a written contract with Leonard M. Stout and Fern L. Stout, husband and wife, for the purchase of the real property involved in this litigation, being property located in Netarts. The total purchase price was $3,150.00, with a down payment of $750.00, the balance to be paid at the rate of $50.00 per month, with interest at 6% per annum. Plaintiff made the down payment from his own funds. The written contract was in usual form. Thereafter, plaintiff and defendant (with child) occupied the property as their home.

On September 26, 1949, plaintiff caused to be prepared, and he executed, the following written assignment of the foregoing contract:

## "ASSIGNMENT OF CONTRACT

Tillamook, Oregon
September 26, 1949

"For value received, the undersigned purchaser under the attached contract and therein called second party, hereby assigns to his co-purchaser, Genevieve B. Collins, all of the right, title and interest of the undersigned as co-purchaser thereunder, together with all of the right, title and interest of the undersigned in and to all the furniture, furnishings, and personal property located on said premises, except the clothing and personal effects of the undersigned.

(Sgd) Richard C. Collins."

And on the same page with the foregoing assignment appears the following:

"We, Leonard M. Stout and Fern L. Stout, do hereby acknowledge notice of the assignment of the

equity of Richard C. Collins under the within contract to Genevieve B. Collins and do hereby agree upon completion of payments thereunder to execute a deed as therein provided to Genevieve B. Collins. The undersigned do hereby release the said Richard C. Collins of and from any liability on the attached contract.

(Sgd)  Leonard M. Stout

(Sgd)  Fern L. Stout.''

Both the assignment and the agreement of the Stouts were prepared at the instance of plaintiff, and by his own attorney, and were attached to the original contract of sale and purchase.

Thereafter, with the exception of one payment of $50.00, defendant made all payments on the contract. At the time the assignment was made, there remained approximately $1,615.00 due. Plaintiff delivered the instruments to the defendant immediately after execution thereof, and she retained possession thereof at all times subsequent thereto. On May 8, 1952, and after she had completed the payments on the contract, defendant caused the assignment to be recorded. On April 22, 1952, the Stouts executed and delivered their warranty deed conveying the premises to defendant. This deed was recorded July 1, 1952.

On or about October 31, 1951, defendant, as plaintiff, instituted a suit for divorce against plaintiff, as defendant, in the circuit court for Tillamook county. No mention was made in plaintiff's divorce complaint of the real and personal property owned by defendant (in this suit) as herein discussed. An effort at reconciliation failed, and on December 24, 1951, the parties definitely and finally separated. On December 26, 1951, Mr. George P. Winslow, attorney for Mrs. Collins,

addressed the following letter to Richard Collins, the defendant in the divorce suit:

"Mrs. Collins has authorized me to proceed with her divorce suit. You were served a long time ago.

"In view of the fact that there has been some attempt made to patch up your differences, I have not yet taken a default against you. However, unless you answer the complaint within five (5) days from this date I will proceed to obtain the divorce in accordance with the summons and complaint served upon you.

"I assume you understand that the home belongs to your wife. You signed it over to her and when and if the divorce is granted you will be required to immediately vacate the same."

Mr. Collins did not answer the complaint nor otherwise appear in the divorce suit, and early in January, 1952, a decree of divorce was entered in favor of Mrs. Collins.

Not that it is highly important from a legal standpoint, nevertheless, in the light of the claims later made by plaintiff in this suit, it is significant that he acknowledged that the property was owned by defendant. On January 20, 1952, plaintiff wrote the Netarts Water District, Netarts, Oregon, as follows:

"Received the water bill a short time ago and am returning it as that home has been in my *ex* wife name since 1949 as she divorced me on the 7th day of this month I don't see why I should also pay her bills! * * *."

Plaintiff commenced this suit to set aside and cancel the assignment of contract executed and delivered on September 26, 1949, and for a decree vesting in him an undivided one-half interest in the real property. He did not attack the assignment on the ground of fraud,

duress, mistake, incompetency, lack of consideration, or any other ground that might be deemed sufficient to set aside a contract. His sole ground for avoiding the effects of the assignment is alleged in paragraph III of his complaint, as follows:

> "That in the month of September, 1949, Plaintiff and Defendant were occupying said premises and that during said month, Plaintiff made plans to have a serious surgical operation performed upon certain portions of his head previously injured while Plaintiff was in the armed forces of the United States; that due to the seriousness of said operation, Plaintiff and Defendant agreed that Plaintiff should assign his interest in the said real property and contract of sale to the Plaintiff and that Plaintiff did, on or about the 28th day of September, 1949, assign his interest in and to said real property and contract to the Defendant, it being agreed between Plaintiff and Defendant that should the contemplated surgery on the Plaintiff be successful, then and in that event the said assignment should become void and of no effect and be destroyed by Plaintiff and Defendant or either of them. That Plaintiff did over a period of approximately seven months immediately after September, 1949, receive treatments for his injury and illness and the necessity of the contemplated surgical operation was avoided; that thereafter the Plaintiff many times asked the Defendant concerning the said assignment and its existance and that Defendant has continually and repeatedly informed the Plaintiff that said assignment had been destroyed by her and was of no force and effect."

In passing, it might be stated that the evidence is conclusive that at the time the assignment was given no surgical operation upon plaintiff was even contemplated. Defendant, who knew nothing whatever about

the proposed assignment until it was delivered to her by plaintiff, testified as follows:

"There was never any agreement. He just handed it to me and said, 'I feel like a heel, I'm living off of you, and I want you to have the property.'"

■ But, however that may be, it is manifest that the assignment was based upon a valuable consideration. Defendant assumed, and plaintiff was relieved entirely from, the payment of the balance then due upon the contract of sale. 12 Am Jur 570, Contracts, § 79.

■ The assignment is couched in plain and understandable language; it is wholly unambiguous. It must be construed strictly according to the terms employed. *City of Reedsport v. Hubbard,* 202 Or 370, 274 P2d 248, 255; 12 Am Jur 749, Contracts, § 228.

■ The purported agreement and understanding alleged in plaintiff's complaint, supra, is nothing more nor less than an attempt to vary and contradict the terms of the written agreement by parol. The prior understandings or agreements of the parties, if any, are conclusively presumed to have been merged into the written agreement, such written agreement being definite, certain and wholly unambiguous in its terms and there being no claim of fraud or mistake. ORS 41.740; *Webster et ux. v. Harris,* 189 Or 671, 676, 222 P2d 644; *Johns-Manville Corporation v. Heckart,* 129 Or 505, 277 P 821; *Kight v. Orchard-Hays,* 128 Or 668, 275 P 682; *Leavitt & Co. v. Dimmick,* 86 Or 278, 168 P 292; *Hilgar v. Miller,* 42 Or 552, 72 P 319; 12 Am Jur 755, Contracts, § 232.

■ The claims of plaintiff that, following the execution and delivery of the assignment, defendant at various times told him and his parents that the assignment

had been destroyed, or would be destroyed, are of no moment. Even if the statements she made in that respect arose to the dignity of a promise on her part to destroy the instrument, it would have made no difference because there was no consideration for such a promise. It was *nudum pactum*. However, defendant denied that she ever made any such promise.

The decree is reversed and the cause remanded to the trial court with directions to dismiss the suit.

Defendant is entitled to costs.